IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Mario Hinijos, | ) | Civil Action No.2:14-cv-01800-DCN-MGB |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| E. Dee Dee Bowers, Admin. Ass.; | ) | |
| Cheron M. Hess, Admin. Ass.; | ) | |
| Anna Hollman, Chief IGB; | ) | |
| Willie Davis, Deputy Warden; | ) | |
| Mr. Commander, Captain; | ) | |
| Mr. Buterbaugh, Lieutenant; | ) | |
| Michael McCall, Warden; | ) | |
| Mr. Richardson, Lieutenant; | ) | |
| Mrs. Gibbs, Sargent; | ) | |
| Mrs. Cain, Officer; | ) | |
| Mrs. Johnson, Officer; | ) | |
| Mr. Sheffield, Officer; | ) | |
| Mrs. Patterson, DHO; | ) | |
| Mr. Williams, Counselor Sub., | ) | |
| Unknown Nurse, SCDC, et al.; | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon the Defendants' Motion for Summary Judgment (Dkt. No. 46).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The Plaintiff brought this action on May 5, 2014. (See Dkt. No. 1.) On December 9, 2014, the Defendants filed a Motion for Summary Judgment. (Dkt. No. 46.) By order filed December 10, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  On January 12, 2015,

the Plaintiff filed a response opposing the Defendants' Motion for Summary Judgment. (Dkt. No. 51.)

## ALLEGED FACTS

The Plaintiff, who is currently housed at Perry Correctional Institution, alleges claims pursuant to 42 U.S.C. §1983. The events alleged in his Complaint occurred while he was housed as a prisoner at Lee Correctional Institution. The Plaintiff asserts four claims in his Complaint. (Dkt. No. 1).

1) The Plaintiff alleges that on January 29, 2013, Defendant Johnson, along with Defendant Cain, instructed him several times to give them his food tray. (Dkt. No. 1-1 at 2 of 36.) He states that he refused to comply with Defendant Johnson's order to hand over his tray because it had not been properly cleaned before the last food service. (Id.) Following repeated requests by Defendant Johnson, the Plaintiff was "sprayed" with "gas." (Id.) Defendant Cain was present when the gas was discharged but did not administer it. (Dkt. No. 51-1 at 2 of 39.) Following the "gas," the Plaintiff was seen by a nurse and stated he "was good." (Id. at 3 of 39.)

2) The Plaintiff alleges that on May 6, 2013, Defendant Richardson, along with Defendant Buterbaugh, passed the Plaintiff's cell while escorting an inmate. (Dkt. No. 1-1 at 3 of 36.) The Plaintiff alleges Defendant Sheffield was present as well. (Dkt. No. 1 at 5 of 11.) Defendant Richardson instructed the Plaintiff to remove the paper from his cell window. (Dkt. No. 1-1 at 3 of 36.) The Plaintiff told Defendant Richardson he was about to wash in the sink. (Id.) Defendant Richardson again instructed the Plaintiff to remove the paper, and the Plaintiff complied. (Id.) In his affidavit, the Plaintiff states he did not have paper in his window; however this is at odds with his other filings with the court. (Dkt. No. 51-1 at 4 of 39.) The Defendants then left his cell door. (Dkt. No. 1-1 at 4 of 36.) The Plaintiff "heard someone say 'shut the fuck up.'" (Id.) He responded by

2

saying "you shut the fuck up." (Id.)  Defendant Richardson and Defendant Buterbaugh returned to the Plaintiff's cell and asked him to repeat himself.  He did.  Defendant Richardson instructed the Plaintiff to come to the flap in the cell door.  As the Plaintiff approached, he stated that "the right thing...to do is to write me up for disrespect."   (Id. at 4 of 36.)  Defendant Richardson then "gassed" the Plaintiff in the face.  (Id. at 4 of 36.)  The Plaintiff then refused repeated requests to come to the flap and was "gassed" several more times.  (Id. at 4 of 36.)  Following the incident, a nurse came and checked on the Plaintiff, and he reported he was having trouble breathing.  (Dkt. No. 1 at 6 of 11.)  The Plaintiff alleges he was not allowed to shower. (Id.)  The Plaintiff alleges Defendant Gibbs did not feed him that day because he was passed out and could not get his tray. (Id.)

        3) The Plaintiff alleges on December 2, 2013, he filed an appeal with the South Carolina Administrative Law Court ("ALC") appealing a disciplinary hearing that had taken place June 18, 2013.  (Dkt. No. 1 at 7 of 11.)  The disciplinary hearing regarded the Plaintiff's interactions with Defendant Richardson on May 6, 2103. (Dkt. No. 46-5 at 10 of 19.)  The Plaintiff states that he "timely filed a motion for production requesting a copy of the hearing transcript which would have clearly shown to [the] court [his] grounds for appealing are true and factual."  (Dkt. No. 1 at 7-8 of 11.)  Defendant Hess responded to the Plaintiff notifying him that the hearing was not transcribed because there was no loss of good time credit. (Dkt. No. 1 at 8 of 11.)  The Plaintiff states Defendant Bowers filed a motion to dismiss the appeal for "failure to timely brief." (Id.)  The Plaintiff alleges that he was unable to adequately prepare a brief in his appeal without a transcript.  (Id.)   The Plaintiff claims "the lack of hearing transcript rendered the proceeding fundamentally unfair and resulted in [him] being falsely imprisoned and deprived of life liberty and property [sic], in the Administrative segregation Unit [sic]." (Id.

3

at 9 of 11.)  The Plaintiff contends lack of a transcript is a result of discrimination against those with life sentences and denies him access to courts.  (Id.)

4) The Plaintiff alleges Defendant Patterson, a disciplinary hearing officer, and Defendant Williams, a "counselor substitute," "deprived [him] of fair proceedings which resulted in [him] being falsely imprisoned and deprived of life liberty and property [sic]." (Dkt. No. 1 at 9 of 11.)  These allegations stem from the disciplinary hearing on June 18, 2013 regarded the Plaintiff's interactions with Defendant Richardson on May 6, 2103. (Dkt. No. 51-1 at 7 of 39.)  The Plaintiff contends Defendant Patterson was "totally biased and somewhat vindictive and malicious."  (Dkt. No. 1 at 9 of 11.)  He alleges Williams "neglected to speak and obtain statements from witnesses which would prove Lt. Richardson had no justifiable reason to gas me." (Id.)

## APPLICABLE LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."  The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the

4

Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 658 (4th Cir. 1998)(citing 42 U.S.C. § 1983); see also Gomez v. Toledo, 446 U.S. 635, 540 (1983); Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

## EXCESSIVE FORCE CLAIMS

The Plaintiff's first two claims allege that the Defendants violated his Eighth Amendment right to be free from "cruel and unusual punishments" by the use of excessive force against him.  U.S. CONST. amend. VIII.  The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  The inmate must show that the "prison official acted with a sufficiently culpable state of mind (subjective component); and the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008)(citing Williams, 77 F.3d at 761).  To satisfy the subjective component, a plaintiff must show that "the measure taken inflicted unnecessary and wanton pain and suffering" by showing the force was applied "maliciously and sadistically" as opposed to "in a good faith effort to maintain or restore discipline."  Whitley v. Albers, 475 U.S. 312, 320 (1986)(internal quotation marks omitted).  To determine if the actions were taken "maliciously or sadistically" the court must weigh (1) the necessity of the force; (2)"the relationship between the need and the amount of force"; (3)"the extent of the injury inflicted"; and (4)"the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Id. at 321.

The use of mace or tear gas on inmates confined in their cell is not *per se* unconstitutional.  Williams, 77 F.3d at 761.  However, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and

5

the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." Id.

As to the January 29 incident, there is no genuine issue of material fact and the Defendants are entitled to summary judgment as a matter of law. The Plaintiff and the Defendants agree that the Plaintiff did not comply with the Defendants' orders to give them his food tray. It is uncontroverted that he repeatedly failed to comply and argued with the Defendants. Following the Plaintiff's failure to comply with the order, he was maced. The actions of the Defendants were necessary to restore order and do not have the culpability required by Williams. The force was in proportion to the need and ended as soon as the Plaintiff was compliant. The Plaintiff does not allege his deprivation suffered and injury were severe as he told the nurse he was "good." (Dkt. No. 51-1 at 3 of 39.)

As to the May 6 incident, there is a genuine issue of material fact as to whether the first spray of mace constitutes cruel and unusual punishment under the Eighth Amendment. The Plaintiff alleges he complied with all of the orders of Defendant Richardson and was maced while he was coming to the cell door as directed. In viewing the facts in a light most favorable to the Plaintiff, he was maced in the face with no provocation or reason by Defendant Richardson. The Plaintiff has met his burden under Iko and Whitley. Examining the first, second, and fourth Whitley factors to satisfy the subjective prong of Iko, the force was not necessary as the Plaintiff was complying with Richardson's order and posing no threat. The Plaintiff's injuries appear to be *de minimus*, however the court's inquiry is focused on the nature of the force not the extent of the injury.[1]

---

[1]See Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (holding that automatic dismissal of an excessive force claim based on *de minimus* injury improperly bypasses the core inquiry into the nature of the force.).

The genuine issues of material fact regarding the May 6 incident are limited. The Plaintiff alleges that only Richardson sprayed him with mace. He makes no claim that Defendant Sheffield or Defendant Buterbaugh administered any force towards him. Defendant Richardson's affidavit alleges only he administered the mace. (Dkt. No. 46-4 at 7 of 12.) Therefore as to Sheffield and Buterbaugh, there is no genuine issue of material fact, and the court recommends summary judgment be granted.[2] The Plaintiff states he stopped complying with the guard's orders to come to the cell door and be restrained after the first discharge of mace. (Dkt. No. 51-1 at 27 of 39.) The subsequent discharges were the result of his non-compliance. The Plaintiff alleges that between each subsequent discharge of mace, the Defendants told him to come to the door and he refused. These subsequent discharges were done to gain the Plaintiff's compliance and restore order to the prison. Viewing the facts in a light most favorable to the Plaintiff, only the first discharge of mace presents a genuine issue of material fact.

The Defendants' memorandum in support of their motion argues that Defendant Richardson, along with the other Defendants, is entitled to qualified immunity. (Dkt. No. 46-1 at 13 of 22.) "Qualified immunity shields government officials from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hill v. Crum, 727 F.3d 312, 321 (4th Cir. 2013)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects officers from liability for "bad guesses in gray areas" and bases liability on the violation of bright-line rules. Id. (quoting Braun v. Maynard, 652 F.3d 557, 560

---

[2] The Plaintiff has not asserted a claim of bystander liability in this case. For bystander liability to exist, an officer must be "(1) confronted with a fellow officer's illegal act, (2) [possess] the power to prevent it, and (3) [choose] not to act...." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002). In the case at bar, the Plaintiff alleges Defendant Richardson unexpectedly sprayed him in the face without warning or provocation. There is no allegation by the Plaintiff that Defendants Buterbaugh or Sheffield could have done anything to stop Defendant Richardson.

(4th Cir. 2011)).  To determine whether a defendant is entitled to qualified immunity, the court must examine whether the defendant violated the plaintiff's constitutional or statutory rights and, if so, whether the defendant's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event."[3]  Id.  As stated *supra*, the Plaintiff's allegations regarding Defendant Richardson's use of force establish a genuine issue of material fact as to whether his Eighth Amendment rights were violated.  Therefore, the court must determine whether Defendant Richardson's "conduct was objectively reasonable in view of the clearly established law at the time of the alleged event."  Id.

"In deciding whether the right was clearly established, we must determine whether an official in the defendant's position knew or reasonably should have known that the action he took violated the constitutional rights of the plaintiff."  Id. at 322.  In this case, the Plaintiff's allegations are that Defendant Richardson blasted him in the face with mace while he was approaching the cell door at Defendant Richardson's command.  This action is clearly beyond the scope of reasonable conduct for an officer in Defendant Richardson's position.  According to the Plaintiff's allegations, the mace was unprovoked, unnecessary and administered for no apparent reason except malice and the bad language used by the Plaintiff.  The court is constrained to deny Defendant Richardson qualified immunity at this juncture because genuine issues of material fact exist as to whether his conduct was constitutional and objectively reasonable.

The Defendants' memorandum in support of their motion argues that Defendant Richardson, along with the other Defendants, is "immune from suit by virtue of the Eleventh Amendment...and [is] not [a] 'person' subject to suit under 42 U.S.C. § 1983." (Dkt. No. 46-1 at 9 of 22.)  The Eleventh Amendment provides: "the judicial power of the

---

[3]As this court finds only Defendant Richardson's conduct to be unconstitutional according to the Plaintiff's factual account, its analysis of qualified immunity is limited to Defendant Richardson.

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." U.S. CONST. amend. XI. In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). As the Supreme Court stated in *Will*,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66 (citation omitted). Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." Id. at 71. However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991)(("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001)(overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs, 538 U.S. 721 (2003)). To the extent Plaintiff brings claims against Defendant Richardson in his official capacity, those claims are barred by the Eleventh Amendment.[4] See Will, 491 U.S. 58; see also Hafer, 502 U.S. 21. To the extent the

---

[4] The Plaintiff states in the Complaint that he is suing Defendant Richardson in his "individual and official capacities." (Dkt. No. 1 at 11 of 11.)

Plaintiff brings his claims against Defendant Richardson in his individual capacity, the Eleventh Amendment does not bar suit.

The Defendants' memorandum in support of their motion argues that Defendant Richardson, along with the other Defendants, is entitled to summary judgment because the Plaintiff did not exhaust all of his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 46-1 at 17 of 22.)  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (exhaustion required even though the plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 18 F. App'x 243 (4th Cir. Sept. 18, 2001) (applying Booth v. Churner to affirm the district court's denial of relief to the plaintiff).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . , the process that exists on paper becomes unavailable in reality." Zander v. Lappin, 415 F. App'x 491, 492 (4th Cir. Mar. 10, 2011)(quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). The district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Id. (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

_____

This case has genuine issues of material fact as to whether or not the Plaintiff has exhausted his administrative remedies regarding the incident that occurred on May 6, 2013.  The Defendants allege in the affidavit of Michael Tindal that the Plaintiff's grievance was "unprocessed since [sic] the Request to Staff Memo was not attached." (Dkt. No. 46-5 at 2 of 19). The Plaintiff was given five days to correctly file the grievance and failed file it.  (Id.)  The Plaintiff contends he was unable to properly file his grievance because the grievance system was structured to make it impossible for him to comply with it.  Plaintiff agrees he filed an initial grievance that was returned unprocessed because it lacked a Request to Staff Memo.  (Dkt. No. 1-1 at 3 or 36.)  The Plaintiff contends he attempted multiple times to obtain the Request to Staff Memo to attach to his grievance, but he was never responded to by the Defendants.  Plaintiff contends he wrote a Request to Staff Memo to Defendant Davis on May 9, 2013. (Id.)  He then wrote a Request to Staff Memo to Defendant Commander.  (Dkt. No. 51 at 18 of 21.)  He never received any response.  The Plaintiff then wrote to Defendant Hallman to address never receiving a response.  He then wrote Defendants Davis and Commander again and never received a response.  (Id.)  With no responses, he was never able to properly file his grievance.  Viewing the Plaintiff's version of the facts in the light most favorable to him, in order to perfect his grievance, the Plaintiff had to acquire a Request to Staff Memo.  The Request to Staff Memo had to be obtained from the Defendants.  This left the Plaintiff in a catch-22.  As to Defendant Richardson, this court recommends the Defendants' Motion for Summary Judgment be denied.[5]

The Plaintiff's only allegation regarding Defendant Gibbs' is that she did not feed the Plaintiff because he was passed out and did not respond to her request for him to retrieve his tray of food after he was maced by Defendant Richardson.  (Dkt. No. 1 at 6

---

[5]Defendants' Memorandum In Support of Summary Judgment raises several other possible defenses and arguments in support of summary judgment.  None of these would apply to the Plaintiff's §1983 excessive force claim against Defendant Richardson.

of 11.)  Missing a single meal does not violate the Eighth Amendment. See Williams v. Ozmint, CA No. 6:07-CV-2409-DCN-WMC, 2008 WL 4372986, at *7 (D.S.C. Sept. 22, 2008) aff'd, 351 F. App'x 825 (4th Cir. 2009); Islam v. Jackson, 782 F. Supp. 1111, 1114 (E.D. Va. 1992); Jones v. Riggs, CA No. 5:08-CV-92-02-MU, 2008 WL 3823693, at *1 (W.D.N.C. Aug. 13, 2008).  Therefore the court recommends Defendant Gibbs' Motion for Summary Judgement be granted.

The Plaintiff alleges Defendants Commander, Davis, Hallman, and McCall "denied [him] due process of law by failing to provide [him] with adequate access to the Grievance System...." (Dkt. No. 1 at 7 of 11.)  Inmates have no constitutionally protected right to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)("[T]here is no constitutional right to participate in grievance proceedings."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988); see also Howard v. Phillips, Civ. A. No. 7:11-CV-00103, 2011 WL 1428074, at *2 (W.D. Va. Apr. 13, 2011). Even if Defendants Commander, Davis, Hallman, and McCall's  actions violate the policies of the South Carolina Department of Corrections, the fact that a Defendant has not followed SCDC's policies or procedures, standing alone, does not amount to a constitutional violation. Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); see also United States v. Caceres, 440 U.S. 741, 754-55 (1979)(noting that "none of respondent's constitutional rights" were violated "by the agency violation of its own regulations"); Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990)("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").  In viewing the Plaintiff's allegations against these Defendants in a light most favorable to him, there is no infringement of any constitutional or statutory right.  The court recommends the summary judgment be granted as to Defendants Commander, Davis, Hallman, and McCall.

## REMAINING CLAIMS

The Defendants' Motion for Summary Judgment should be granted as to the Plaintiff's remaining two claims because neither are viable claims under §1983. The Plaintiff claims the lack of a transcript from his June 18, 2013 disciplinary hearing denied him access to courts. He argues he could not prepare a brief for the ALC without a transcript. The Plaintiff was allowed to listen to a recording of his hearing. (Dkt. No. 51-1 at 29 of 39.) Inmates are entitled to minimal due process protections in connection with prison disciplinary hearings where they might lose good time credits. Wolff v. McDonnell, 418 U.S. 539, 564 (1974). There is no constitutional or federal right to a disciplinary hearing transcript where there is no liberty interest at stake. Id. In this case, the Plaintiff is not eligible for good time credits because he is serving life without the possibility of parole. (See Dkt. No. 51-1 at 6 of 39.) Furthermore, a prisoner must show some actual injury resulting from a denial of access to courts. "The injury requirement is not satisfied by just any type of frustrated legal claim." Lewis v. Casey, 518 U.S. 343, 354 (1996). All that is required is that prisoners have the ability "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355. In this case, the Plaintiff was attempting to appeal an internal disciplinary hearing in the Department of Corrections to the ALC. The Plaintiff does not allege any actual injury, and this type of appeal is beyond the constitutionally required access guaranteed by Lewis.

The Plaintiff's final claim is that his June 18, 2013, disciplinary hearing was unfair and therefore unconstitutional. In his Complaint, the Plaintiff makes general accusations against Defendants Patterson and Williams calling them "somewhat vindictive and malicious" and claiming their actions "deprived [him] of fair proceedings which resulted in [him] being falsely imprisoned and deprived of life liberty and property [sic]." (Dkt. No.

13

1 at 9 of 11).  In his affidavit attached to his Response to Summary Judgement, the Plaintiff again makes an unspecific claim his hearing was unfair and references his grievance forms as being true statements regarding the hearing.  (Dkt. No. 51-1 at 5 of 39.)  In his grievance forms, the Plaintiff's primary gripes revolve around his interpretation of the department of correction's rules regarding the timing of disciplinary hearings. (Id. at 29-39 of 39.)  This is nowhere in his Complaint.  The Plaintiff's claim  for false imprisonment is merely a conclusory statement, and he does not allege how he was falsely imprisoned and who was holding him.  The Plaintiff is already serving a sentence of life without parole. (Dkt. No. 46-3 at 2 of 13.)  A *pro se* complaint from a prisoner "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hughes v. Rowe, 449 U.S. 5, 9-10 (1980).  Nowhere in his Complaint or subsequent filings has the Plaintiff alleged anything in regards to his June 18, 2013 hearing that would constitute an infringement of a constitutional or federally protected rights.  Summary judgment should be granted as the Plaintiff has failed to state a claim in regards to his June 18, 2013 hearing.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 46) be GRANTED in part and DENIED in part.  Specifically, it is RECOMMENDED that Defendants' Motion be DENIED as to the Plaintiff's May 6, 2013, excessive force claim against Defendant Richardson.  It is recommended that Defendants' motion be GRANTED as to all other claims.

IT IS SO RECOMMENDED.

Signature Page Attached.

14

March 24, 2015

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).