# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| MARIO HINOJOS, #301870, )<br>  )<br>    Plaintiff, )<br>  )<br>vs. )<br>  )<br>E. DEE DEE BOWERS, Admin. Asst.; )<br>CHERON M. HESS, Admin. Asst.; )<br>ANNA HOLLMAN, Chief IGB; )<br>WILLIE DAVIS, Deputy Warden; )<br>MR. COMMANDER, Captain; )<br>MR. BUTTERBAUGH, Lieutenant; )<br>MICHAEL MCCALL, Warden; )<br>MR. RICHARDSON, Lieutenant; )<br>MRS. GIBBS, Sergeant; )<br>MRS. CAIN, Officer; )<br>MRS. JOHNSON, Officer; )<br>MRS. SHEFFIELD, Officer; )<br>MRS. PATTERSON, DHO; )<br>MR. WILLIAMS, Counselor Sub.; )<br>UNKNOWN NURSE, SCDC, et al., )<br>  )<br>    Defendants. ) | No. 2:14-cv-01800-DCN<br><br>**ORDER** |

   This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R") recommending that this court grant in part and deny in part a motion for summary judgment filed by fifteen defendants (collectively, "defendants"), all employees at Lee Correctional Institute ("LCI") of the South Carolina Department of Corrections ("SCDC"). Specifically, the R&R recommends that defendants' motion be denied as to plaintiff Mario Hinojos's ("Hinojos") excessive force claim against defendant Lieutenant Richardson ("Richardson"). For the reasons set forth below, the court adopts the magistrate judge's R&R, denies summary judgment as to Hinojos's excessive force claim, and grants summary judgment in all other respects.

1

## I.  BACKGROUND[1]

Hinojos is a state prisoner currently housed at Perry Correctional Institute.  At all times relevant to the present action, Hinojos was housed at Lee Correctional Institute ("LCI").  Hinojos alleges that on May 6, 2013, Richardson, Lieutenant Butterbaugh ("Butterbaugh"), and Officer Scheffield ("Scheffield") administered chemical munitions in violation of his Eighth Amendment rights.  Compl. 5.  Hinojos specifically alleges that Richardson sprayed him over eight times, stripped his cell of everything for 72 hours, and ordered the other officers to cut off his water.  Id.  Hinojos further contends that he was not allowed to shower for three days and that his cell was covered in gas, causing his skin to burn for three days.  Id.

Hinojos filed a grievance related to the incident on July 15, 2013.  In his grievance, Hinojos lays out a more extensive outline of the events that allegedly unfolded on May 6, 2013.  Compl. Ex. 1, at 3.  According to Hinojos, Richardson and Butterbaugh walked by his cell and told him to take the piece of paper off of his cell window.  Id.  Hinojos refused, and Richardson again told him to take the paper off of his cell window, then left.  Id.  Shortly thereafter, Hinojos heard another inmate say "shut the f*** up" and in return, Hinojos said "you shut the f*** up."  Id. at 4.  At that point, Richardson and Butterbaugh returned to Hinojos's cell and "asked [him] to repeat" himself.  Id.  Hinojos then "did as they said" and presumably repeated the vulgar language.  Id.  Richardson then told Hinojos to come to the food flap.  Id.  Hinojos claims that as he was walking toward the flap, he told Richardson that "the right thing for him to do is to write [him] up for disrespect," and then Richardson proceeded to spray chemical munitions in his face.

---

[1] The following facts are viewed in the light most favorable to Hinojos as the non-moving party. See, e.g., Robinson v. Clipse, 602 F.3d 605, 607 (4th Cir. 2010).  Because the only claim at issue is Hinojos's excessive force claim against Richardson, the court will only state the facts relevant to that claim.

2

Id.  Hinojos then turned his back to the flap, and Richardson again directed Hinojos to come to the flap.  Id.  Hinojos refused, and Richardson again sprayed chemical munitions into Hinojos's cell.  Id.  Thereafter, Hinojos failed to comply with two additional directives to come to flap and was sprayed again and again.  Id.  Hinojos claims that at that point, he passed out from the fumes.  Id.  Hinojos alleges that he woke up and washed his face and that while he was washing his face, Richardson sprayed more chemical munitions into the cell because Hinojos refused to come to the flap.  Id.  According to Hinojos's version of the incident, he complied with Richardson's first directive to come to the flap but ignored five directives after Richardson initially sprayed him while he was complying with his first directive.  Id.  Hinojos alleges that Richardson sprayed him a total of eight times and instructed other officers to turn off the water in his cell.  Id.  Hinojos claims that Richardson and the other officers then stripped his cell and that he was unable to shower for three days.  Id.

During the stripping of Hinojos's cell, Richardson and Butterbaugh discovered "a homemaid [sic] restraint key, three pieces of metal approximately eight inches in length and a letter [Hinojos] wrote to a staff [sic]."  Defs.' Mot. Ex. 4, at 9.  According to prison records, the items found in Hinojos's cell were confiscated and turned over to the contraband department.  Id. at 10.  Hinojos was charged accordingly.  Id.  According to prison records, Richardson used 82 grams of chemical munitions.  Id.

An entry in Hinojos's medical records, submitted by nurse Karen Sabbagha on the day of the incident, indicates that after the incident, Hinojos's breathing was even and non-labored, there was no acute distress, and Hinojos was talkative.  Defs.' Mot. Ex. 3, at 12.  The medical records further indicate that Hinojos was instructed to rinse with cool

water only and to avoid soaps and lotions, and that Hinojos verbalized his understanding of the directives. Id.

On May 5, 2014, Hinojos filed the present action pursuant to 42 U.S.C. § 1983. Hinojos brings the following claims: (1) excessive force claim against Officer Johnson ("Johnson"), Officer Cain ("Cain"), Lieutenant Richardson ("Richardson"), Captain Commander ("Commander"), and Deputy Warden Davis ("Davis") relating to an incident that occurred on January 29, 2013; (2) excessive force, denial of care, and denial of due process claims against Richardson, Butterbaugh, Sheffield, "Unknown Nurse," Sergeant Gibbs, Captain Commander ("Commander"), Deputy Warden Davis ("Davis"), Anna Hollman ("Hollman"), and Warden McCall ("McCall"); (3) denial of access to the courts claim against Cheran M. Hess, Bryan P. Stirling, Nikki Haley, and Dee Dee Bowers; and (4) denial of a fair disciplinary hearing claim against Patterson and Williams.

On December 9, 2014, defendants filed a motion for summary judgment. The court filed an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Hinojos of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. Hinojos filed a response in opposition to defendants' motion for summary judgment on January 12, 2015. The magistrate judge filed an R&R on March 24, 2015, recommending that the court deny defendants' summary judgment motion with regard to Hinojos's excessive force claim against Richardson but grant defendants' summary judgment motion in all other respects. Defendants filed objections to the R&R on April 1, 2015. Hinojos did not file any objections to the R&R. The matter is now ripe for the court's review.

## II. STANDARD

### A. Objections to R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). In absence of a timely filed objection to a magistrate judge's R&R, this court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may adopt the portions of the R&R to which the plaintiff did not object, as a party's failure to object is accepted as agreement with the conclusions of the magistrate judge. Thomas v. Arn, 474 U.S. 140, 149–50 (1985). This court may accept, reject, or modify the report of the magistrate judge, in whole or in part, or may recommit the matter to him with instructions for further consideration. 28 U.S.C. § 636(b)(1).

### B. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Id. at 255.

### C. Pro Se Plaintiff

Plaintiff proceeds pro se in this case. Federal district courts are charged with liberally construing complaints filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se complaints are therefore held to a less stringent standard than those drafted by attorneys. Id. Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### III.  DISCUSSION

Hinojos did not file objections to the R&R. As noted above, a party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas, 474 U.S. at 150. In the absence of objections to the magistrate judge's R&R, this court is not required to provide an explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond, 416 F.3d at 315 (quoting Fed. R. Civ. P. 72 advisory committee's note). Furthermore, failure to file specific written objections to the R&R

results in a party's waiver of the right to appeal from the judgment of the District Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas, 474 U.S. 140; Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). The court finds no clear error in the magistrate judge's findings and therefore grants summary judgment in favor of all defendants as to all claims to which there are no specific objections.

What remains to be considered is whether summary judgment is appropriate on Hinojos's excessive force claim against Richardson. Defendants object to the R&R to the extent that it recommends denying summary judgment on Hinojos's excessive force claim against Richardson, arguing that: (1) Richardson did not violate Hinojos's Eighth Amendment rights; (2) Richardson is entitled to qualified immunity; and (3) Hinojos failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA").

### A. Excessive Force Claim

Richardson objects to the magistrate judge's denial of summary judgment as to Hinojos's excessive force claim, arguing that Hinojos's conclusory allegations that he was "maced in the face with no provocation" do not create a genuine issue of material fact. See Defs.' Objections 2. However, for the reasons set forth below, the court agrees with the magistrate judge that, viewing the evidence in the light most favorable to Hinojos, a reasonable jury could conclude that Richardson used excessive force when he repeatedly administered chemical munitions against Hinojos after he complied with Richardson's first directive. Thus, Hinojos's excessive force claim survives summary judgment.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In determining whether a complaint states an Eighth Amendment claim that a defendant used excessive force, the core judicial inquiry does not concern the extent of the injury but rather the nature of the force: "specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (quoting Hudson, 503 U.S. at 7).

To prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, a claimant must meet a "heavy burden" to satisfy the subjective component, Whitley v. Albers, 475 U.S. 312, 321 (1986), for which the claimant must show that the force used by the corrections officers "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 6 (1993). In the context of a prison disturbance, this question "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320–21).

> When evaluating evidence to determine whether it is legally sufficient to satisfy the subjective component, a court may allow an inmate's claim to go to the jury only if it concludes that the evidence, viewed in a light most favorable to the claimant, will support a reliable inference of wantonness in the infliction of pain.

Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (internal quotation marks omitted). Factors relevant to this determination include (1) the need for application of force; (2) the relationship between that need and the force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 320–21.

Second, the claimant must meet the objective component, which concerns whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation. Hudson, 503 U.S. at 2. "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain and restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37 (internal quotation marks omitted). The objective component is not as demanding because "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . ." Id. (internal quotation marks omitted).

As compared to other forms of force, the limited application of chemical munitions is a mild response, and as such, its initial application represents a tempered response by prison officials. Williams, 77 F.3d at 763. Further, courts recognize that a limited application of chemical munitions may be a "much more humane and effective" response than "a flesh to flesh confrontation with an inmate." Id. (quoting Soto v. Dickey, 744 F.2d 1260, 1262 (7th Cir. 1984)). Moreover, prompt washing of the affected area will usually provide immediate relief from pain. Id.

Because "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain,'" the Fourth Circuit "has closely scrutinized the use of tear gas or mace . . . in correctional facilities." Williams, 77 F.3d at 763 (quoting Soto, 744 at 1270). In doing so, courts recognize that "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.'" Id. (quoting

9

Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).  Thus, "although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'"  Id. (quoting Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984)).  "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis."  Williams, 77 F.3d at 762.

Applying the factors in Whitley, a reasonable jury could determine that Richardson used force "maliciously and sadistically for the very purpose of causing harm."  Whitley, 475 U.S. at 320–21.  When viewed in the light most favorable to Hinojos, the facts do not indicate that Hinojos provoked Richardson or posed a security threat that created a necessity for the use of any force.  In fact, the only "provocation" indicated from the record was Hinojos's use of vulgar language and Hinojos's statement to Richardson to "write [him] up for disrespect."  Pl.'s Compl. 15.  Regardless of what Hinojos said to Richardson, "[v]erbal provocation alone does not justify the use of force."  Miller v. Leathers, 913 F.2d 1085, 1089 (4th Cir. 1990).  Moreover, Hinojos alleges that he complied with all of Richardson's orders and that Richardson sprayed him in the face while he was walking toward the window flap as directed.  See Pl.'s Compl. 15.  Viewing these facts in the light most favorable to Hinojos, Richardson used chemical munitions without sufficient provocation to justify the use of chemical munitions.

Applying the second Whitley factor, the court determines that a reasonable jury could conclude that the amount of force used in light of the little to no provocation was

10

unreasonable. Hinojos alleges that Richardson "gassed" him on at least eight different occasions on May 6, 2013, even after Hinojos allegedly passed out from inhaling the fumes. See Pl.'s Compl. 15. Prison records indicate that at the conclusion of the incident, Richardson used eighty-two grams of pepper spray. Richardson Aff. ¶ 7, Ex. B. Hinojos alleges, and Richardson does not dispute, that Hinojos passed out twice from the fumes. Pl.'s Compl. 15. Chemical munitions, though a legitimate form of control under certain circumstances, can become an instrument of brutality if used indiscriminately against a defenseless prisoner. Even when a prisoner's conduct warrants some form of response, "evolving norms of decency require prison officials[,]" such as Richardson, to use "techniques and procedures that are both humane and restrained." Slakan, 737 F.2d at 372.

  Third, any threat Richardson perceived was minimal at best. Hinojos was confined to his cell and was no threat to anyone at the time Richardson administered chemical munitions. Although weapons were ultimately discovered in his cell after the "stripping," there is no indication that Richardson knew Hinojos had weapons in his cell prior to repeatedly administering the chemical munitions. The record is devoid of evidence that Hinojos threatened the officers or put anyone's safety in jeopardy.

  Further, there is no evidence that Richardson did anything to temper the severity of his response. Hinojos claims that Richardson administered chemical munitions after Hinojos complied with Richardson's first directive to come to the flap. In the light most favorable to Hinojos, Richardson had no reason to spray him because Hinojos was complying with his request. Further, even if Hinojos had ignored the first directive, Richardson could have made additional requests for Hinojos to come to the flap before

resorting to the use of force. It seems counterintuitive that the only reasonable way to "force" an inmate to come to his cell door is to spray him in the face with chemical munitions from the other side of the same door. Viewed in Hinojos's favor, the evidence shows that Richardson used force by spraying Hinojos in the face while he complied with the first request to come to the flap.

Lastly, as alleged, a reasonable jury could determine that Hinojos suffered more than de minimus injuries after the incident. Whitley, 475 U.S. at 320–21; Richardson Aff. ¶ 9, Ex. C.; see also Wilkins, 559 U.S. at 39 (holding that automatic dismissal of an excessive force claim based on de minimus injury improperly bypasses the core inquiry into the nature of the force). Again, undisputed evidence in the record indicates that Hinojos was sprayed by chemical munitions multiple times, which, according to Hinojos, caused him to lose his vision and pass out on two separate occasions. See Hinojos Aff. ¶¶ 11–13. Hinojos also alleges that he was having difficulty breathing and seeing as a result of being continuously exposed to the pepper spray. He states:

> Lt. Richardson sprayed me over 8 times[,] stripped my cell of everything for 72 hours, order[ed] the officers to cut my water off. I was given no shower, I had nothing to wash my body with for 3 days [. . . .] [M]y whole cell was covered in gas. Everything I touched would set me to burning again. My whole body was burning for 3 days.

Pl.'s Compl. 5. The prison nurse examined Hinojos after the incident and did not notice any serious physical injuries. See Richardson Aff. ¶ 9, Ex. C. The nurse advised Hinojos to "rinse [his skin] with cool water . . . ." Id. However, according to Hinojos, his water was cut off at Richardson's instruction, leaving him with nothing to rinse the pepper spray from his skin. Hinojos also claims that his skin burned for three days after the incident until prison officials permitted him to shower. Defendants do not dispute that

12

Hinojos was not permitted to shower for three days.  Viewing these facts in the light most favorable to Hinojos, a reasonable jury could conclude that, under Whitley, 475 U.S. at 320–21, Hinojos's injury was more than de minimus.

Richardson argues that Hinojos's "conclusory assertions and unsubstantiated speculation are insufficient to deny summary judgment." Def.'s Objections 2.  This argument fails.  Hinojos produced a grievance relating to the incident, numerous staff requests, as well as sworn affidavits from Hinojos and two witnesses who corroborated his allegations.  See Pl.'s Compl. 40.  One inmate stated in his affidavit that Butterbaugh stopped at his cell door after the incident and in response to the inmate's inquiry into why Hinojos had to be "gassed" and "stripped," Butterbaugh told him that "you can't just tell a man to shut the fuck up bud you know that." Compl. Ex. 1, at 29.  Hinojos's cellmate, James Sharpe, stated in his affidavit that "Richardson popped Hinojos [sic] flap and gassed him without giving him a directive to come to the flap to be restrained." Id. at 30.  Whether the inmates' statements are credible is a determination better suited for the jury.  See United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (providing that credibility determinations are for the trier of fact, not the reviewing court); see Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979) (summary judgment "may not be invoked where, as here, the affidavits present conflicting versions of the facts which require credibility determinations").  After a thorough review of the record, Hinojos's allegations and supporting documents create a genuine issue of material fact sufficient to survive Richardson's summary judgment motion.  Considering these facts in the light most favorable to Hinojos, a reasonable jury could conclude that Richardson used force

"maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320–21.

### B. Qualified Immunity

Richardson also objects to the magistrate judge's recommendation that the court find that Richardson is not entitled to qualified immunity. Defs.' Objections 4. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "[I]n order for [a plaintiff] to defeat [a] motion for summary judgment, (1) there must be a genuine factual dispute as to whether Defendants violated [the plaintiff's] constitutional rights, and (2) those rights must have been clearly established at the time he suffered his injuries." Stewart v. Beaufort Cty., 481 F. Supp. 2d 483, 489–90 (D.S.C. 2007); see also Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) ("To escape dismissal of a complaint on qualified immunity grounds, a plaintiff must (1) allege a violation of a right (2) that is clearly established at the time of the violation." (citing Pearson, 555 U.S. at 231)).

For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Wilson v. Layne, 526 U.S. 603, 615 (1999). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. The unnecessary and wanton infliction of pain by a

prison official through the use of excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment for years.  See Hudson, 503 U.S. at 5; Whitley, 475 U.S. at 319.

At the time of the alleged misconduct, it was clearly established that it is an Eighth Amendment violation for a prison official to use chemical munitions in quantities greater than necessary or for the sole purpose of inflicting pain.  Williams, 77 F.3d at 763; Tedder v. Johnson, 527 F. App'x 269, 274 (4th Cir. 2013) ("[The] malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law.").  As discussed above, the court holds that there is a genuine issue of material fact as to whether Richardson used excessive force against Hinojos; therefore, the court cannot determine at the summary judgment phase that Richardson's actions were objectively reasonable for purposes of granting qualified immunity.  See Peoples v. Lloyd, No. 1:08-cv-3958, 2010 WL 3951436 (D.S.C. Oct. 7, 2010) (denying defendant's qualified immunity defense of because issues of fact existed as to defendant's use of excessive force and use of chemical munitions).

C. **Exhaustion**

Richardson also objects to the magistrate judge's recommendation that a reasonable jury could determine that Hinojos exhausted his administrative remedies.  Defs.' Obj. 4.  Under § 1997e(a) of the PLRA "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 84 (2006).  However, "an administrative remedy is not considered to have been

available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Stenhouse v. Hughes, No. 9:04-cv-23150, 2006 WL 752876, at *2 (D.S.C. Mar. 21, 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies."). Accordingly, courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (per curiam) (citing Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)). "When prison officials prevent inmates from using the administrative process, the process that exists on paper becomes unavailable in reality." Id. (quoting Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)). Defendants have the burden of establishing that a prisoner has failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., 407 F.3d 674 (4th Cir. 2005).

In Hill, the Fourth Circuit overturned a district court's holding that an inmate failed to exhaust administrative remedies. 387 F. App'x at 396. The court found that there was a genuine issue of material fact as to whether the inmate exhausted his administrative remedies when the inmate alleged that prison officials refused to provide necessary forms, destroyed them, or failed to respond. Id. at 400–01. Importantly, the court recognized the inmate's high volume of previous filings, finding that "the fact that [the inmate] successfully filed many grievances in the past suggest[ed] that [the inmate] [was] familiar with the requirements of the administrative process and [was] not purposefully attempting to evade them." Id. at 401.

In support of their argument that Hinojos failed to exhaust his remedies, defendants provided the affidavit of Michael Tindal which states that Hinojos's grievance was "unprocessed since the Request to Staff Memo was not attached." Defs.' Mot. Ex. 5, Tindal Aff. ¶ 6. Hinojos was given five days to re-file the grievance. Id. Hinojos claims that he attempted to properly exhaust his administrative remedies, but that he never received a response to his Requests to Staff Members ("RTSM"). In support of his exhaustion argument, Hinojos provided a copy of his first grievance relating to the May 6, 2013 incident, filed on July 15, 2013. Compl. Ex. 1, at 36. He also provided copies of RTSMs that he sent to Davis on May 9, 2013 and July 15, 2013. Id. at 13–14. Hinojos additionally provided two RTSMs that he sent to Hollman on June 2, 2013 and July 9, 2013 inquiring about why he had not received responses from his prior requests to Hollman and Davis. Id. at 14–15. Hinojos expressed his frustration with his inability to file a proper grievance without first receiving a response to his RTSMs. Id. In response, Hallman stated that "[t]here are new procedures being implemented that will require RTSM's to be responded to within 45 days. It will take time for all areas to prepare and begin." Id. at 14. Hinojos was unable to file a proper grievance relating to the incident because he never received a response to his RTSMs. Viewing the facts in Hinojos's favor, Hinojos made sufficient attempts to exhaust his administrative remedies as required under the PLRA. Therefore, Richardson is not entitled to summary judgment. \

## IV.   CONCLUSION

For the reasons set forth above, the R&R is **ADOPTED** and defendants' motion for summary judgment is **DENIED** in part and **GRANTED** in part.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 14, 2015**
**Charleston, South Carolina**